Case number 14-1068, Intercollegiate Broadcasting System, Inc., Appellant v. Copyright Royalty Board, et al. Mr. Grimm for the appellant, Ms. McNeil for the appellees, and Mr. Hellman for the intervener. May it please the Court, I'm John Grimm on behalf of the Intercollegiate Broadcasting System. Under this Court's decisions in Landry and Action on Smoking, the copyright royalty judges were required to conduct a new proceeding on remand, and not simply to rely exclusively on the record compiled by their unconstitutionally appointed predecessors. Although the judges ignore Landry completely in their briefs, that case stands for the proposition that when a decision violates the Appointments Clause, that constitutional violation will survive even a de novo review. As a result, when the judges issued their new determination, relying exclusively on the record which included the transcripts and necessarily included the evidentiary rulings and credibility determinations of the earlier judges, they merely enshrined and imported the constitutional violations that this Court identified in 2012. In what way did it include the credibility determinations? Well, Your Honor, because they considered the entire record, which included witness testimony, every affirmative piece of evidence that the original judges allowed into the record reflects a determination that that piece of evidence was admissible, that that particular witness was credible. Well, yes to the first, not to the second. Whether they allowed it into the record is unrelated to the credibility. So let's divide the two for just one moment. With respect to admissibility, is there some argument that some of these statements would not have been admissible? The rules of the statute provide permit hearsay. So what's the admissibility claim? Well, Your Honor, there's actually a claim that evidence that the original judges excluded ought to have been admitted.  Yes, Your Honor. And I want to talk about that, too. But let's start with the first. Was there anything that was admitted that shouldn't have been? Your Honor, we don't identify anything that should have been admitted. But the point is that's for the new judges to determine. Well, the new judges have determined. They said that they have the authority to review the record and make determinations on evidence. And they decided which evidence can stay in and which could stay out. And they ruled on the question, the specific question you're talking about, right? The very example you gave was an example of something that should have been ruled out. They actually addressed, didn't they? They did, Your Honor. And it is true that they reviewed those decisions. And so our objection is not necessarily with respect to any specific piece of evidence that they admitted. It's more broadly to the sense that that inherently relies on evidentiary rulings. But even if the Court does not agree that the new judges or, rather, even if the Court finds that the new judges did properly determine whether the evidence was admissible, there is still the fact that the judges chose, the original judges chose to exclude specific pieces of evidence that IBS submitted on the basis that IBS's witness attempted to testify to a report. The judges found it inadmissible for him to testify as to the content of the report. Therefore, they excluded that testimony. That testimony went to the propriety of the $500 annual fee. And after they excluded it, the current judges found that there was no evidence that IBS's members could not afford the $500. I'm sorry. At JA 224, which is the order that the new judges issued about how they were going to proceed, they said that they had concluded that no party has provided any specific reason why it is necessary to reopen the record and take further evidence. So they made that conclusion. Isn't that conclusion due some deference by us? And where in the record is it that you objected to that conclusion or stated that they should reach a different conclusion with respect to introducing other evidence? Well, Your Honor, with respect to whether that decision is due deference, the reason why, because this pertains to a constitutional question, this court does review that de novo, and so the judge's decision not to reopen the record would not be due deference in that respect. The decision also — Did you ask to reopen the record? We did, Your Honor. With respect to specific things? With respect to the $500 minimum fee that was the subject of the original appeal in 2012, following the court's remand, the judges solicited arguments on the proper course following remand. And IBS urged the judges to open the proceeding up, at the very least for new papers. And they refused to do that? They did, Your Honor. The properly constituted new judges refused to do that? Your Honor, they were properly constituted, and it is perhaps within their purview to make that decision, but it then exceeds their authority to then rely on the record compiled by the unconstitutionally appointed. The one you're talking about is the statement by Cass, Captain Cass. Is that right? Yes, Your Honor. But they specifically addressed that, too, both in a footnote to their opinion and on reconsideration, saying that it would not have made a difference. Even if testimony had been admitted, it could not have made up for the deficiencies. That's their — that's the determination of the properly constituted new judges. It is, Your Honor, but the effect of the court's vacator and remand was that that record that they made that determination based on should have had no effect. Now we're on a — are we on a constitutional question now, or are we on what you think we meant when we vacated? Well, Your Honor, this particular question is as to the effect of the court's vacator. All right, so let's hold that for a second. As a member of that panel, I'm interested in what you think we meant, but I'd like to hold that just for the moment. On the constitutional question, so here — I'm having a little difficulty understanding exactly what the constitutional problem is. So imagine that they decided that — they decided that you can — are you saying that they — that it would be impossible to have them consider the exact same evidence that the previous panel considered if it were presented anew? No, Your Honor. So you could — they could limit the scope of the remand to the — exactly the same evidence, but it would have to be submitted again, right? Yes, Your Honor, but part of that evidence was live witness testimony, and where the constitutional error lies is in the fact that they reviewed the witness transcripts of hearings conducted by the prior judges and did not take new testimony themselves. Why did they need to do that? Whatever was in the minds of the first judges about credibility, that was in their minds. Their minds are gone. The only minds left are the new judges, and they can make a determination about credibility by reading the transcript that's not infected by the first set of minds. Now, you may have a separate statutory slash APA kind of argument, but I just want to focus on the constitutional argument. In what way, not only is it possible, but is it even conceivable that they could be affected by the first set of judges' views about the credibility of witnesses when there are no credibility determinations here? Well, Your Honor, two points to that. The first is that there is an important aspect to a credibility determination that comes from being able to see the witness in person, face-to-face. So not having the opportunity to see how the... I understand. I'm well aware of how that's possible. The question is, how does it make a difference for these judges? These judges are simply reading transcripts and making their own judgments about credibility. It's not a case where the previous panel has said, this is not credible, and the second panel says, we're going to defer that credibility judgment. It's just a question of them reading a transcript and deciding whether or not it's credible themselves. Your Honor, they do not explicitly at any point say that they're deferring as to credibility determinations, although there are portions of the determination where they do explicitly rely on colloquies that took place between the previous attorneys and the previous judges. And furthermore, under Landry, the Court held that when there is an appointments clause violation, this is the type of violation for which prejudice does not need to be shown. And so in the first instance, when IBS was challenging the constitutionality of the judges, it would not have been required to show how specific determinations prejudiced it. But it seems to take Landry a little bit too far, say, for two reasons. The first question is, imagine that the first panel had only considered a paper record and nothing else. Could the second panel consider the same paper record? It could potentially consider that paper record, Your Honor. But why? Maybe there's some prejudice that we don't know about and no prejudice needs to be proven. Your Honor, the papers are submitted at an early stage in the proceeding before the judges necessarily have an opportunity to inject their views. So you're saying there's no possibility of prejudice? I'm not saying that there's no possibility of prejudice, Your Honor. It is not – we are not taking the position that they would necessarily, if it were a papers-only proceeding, that they would necessarily be prevented from considering that. Well, why not? I'm trying to figure out why. I want to know why it's – why your no prejudice needs to be proved argument doesn't go to meaning, basically can't do anything that the previous panel did. Well, Your Honor, if it is the case that there's no prejudice from the earlier papers, it's only because of the chronology because they're filed so early before the judges have a chance to act. We are taking the position that it would be proper to require them to submit new papers, however. Just resubmit exactly the same papers? No, Your Honor, to allow them to open the docket up at least for new paper submissions if the parties choose to. Why is that? So if the parties in the first instance decided they only wanted to put in certain papers, why does the second panel have to – why is that as a constitutional matter? I understand you may have another argument, but why as a constitutional matter does the second panel have to allow a reopening of the entire proceeding? Your Honor, it's not our position that it is a constitutional requirement. It is an argument that it would be prudential in light of the passage of time, and this is what the court was, I think, speaking to in action on smoking when it held that when a decision is vacated. I do want to talk about the action on smoking, but that's clearly not a constitutional decision, right? Correct, Your Honor. All right. One more question about Landry. Landry says that the reason it's imposing this no prejudice required standard is that otherwise there would be a catch-22 and we'd never be able to vacate improper appointments, right? Yes, Your Honor. But here we've already vacated it, right? We've already vacated the improper appointment. Landry was not a case where there had been a vacation and then another proceeding by the newly appropriately appointed person, right? That is correct, Your Honor. However, the vacator was not fully affected for the reasons we mentioned, which are that the judges considered exclusively the original record and with respect to the $500 fee arrived at exactly the same determination as their predecessors. That alone, you don't think constitutionally or the panel required there be a different decision with respect to the $500 fee, do you? No, Your Honor, but if they were going to arrive at any decision, and in particular an identically, substantively identical decision, they certainly should not have relied on the record compiled by their predecessors in order to reach that decision. All right. I've monopolized the question. Go ahead. I don't believe that anyone cited this in their brief, but as I reviewed the regulations, I saw 37 CFR 350.6. I don't know if you are familiar with it, but it says the regulations of the copyright royalty judges are intended to provide efficient and just administrative proceedings and will be construed to advance these purposes. For purposes of an individual proceeding, the provisions of this subchapter may be suspended or weighed in whole or in part upon the showing of good cause to the extent allowable by law. I read that as saying that we have these regulations, but for good cause, if it's efficient and just to do so, we can suspend regulations in whole or in part in an individual case as necessary. Isn't that precisely the finding that they made at JA 224 and 225 when they said that for efficiency purposes, we don't need to have another hearing? I mean, weren't they essentially invoking 350.6 without explicitly saying so? They may have been doing so, Your Honor, and it certainly would promote efficiency to suspend the hearing, but there are other criteria, including to promote justice, and the situation that results from them choosing not to have that hearing is that to this day, IBS's members have not had the chance to present live argument and testimony to a constitutionally appointed panel of judges. So although it would certainly promote the expedient resolution of the matter, there are other concerns, including the resolution of the constitutional injury that led the court to remand the case in 2012. And I think that additionally, Your Honor, to go back to that point, this does tie in with the decision in action on smoking that said that when there is a vacator and a remand, the original record is without any effect. And so if the judges wanted to rely on something additional to the papers that were initially submitted, they were required to conduct a new proceeding in order to elicit it. But I guess my point in citing the statute is that even if I accept your proposition that the original record was of no effect, the regulations say that the new panel could say, okay, the original record is of no effect as it is, but if we take affirmative action to say that we see no reason to supplement the record, and we will therefore incorporate that vacated record as our record here, and we think it's efficient and just to do so, the regulations give them the power to make that determination, don't they? They may give them the power to decide not to conduct oral testimony, but by saying that this record is of no effect because of the vacator, but we choose to incorporate it into our record, that is giving it effect. That is essentially giving it the effect that action on smoking says that it should not have. But if they make a finding that we don't believe that there's anything that was omitted from the original record, that the parties have identified that they would put in a new record, we'll just rely on the old record, then aren't we elevating form over substance at that point? I don't think so, Your Honor, because, again, by doing that, they're allowing the earlier judges who were unconstitutionally appointed to have some amount of influence in the current proceedings. And, again, as I mentioned, this would be inconsistent with action on smoking, which requires them to build a new record, in part for no other reason than the passage of time and the fact that here at the tail end of the royalty rate period, the parties are necessarily going to have a better understanding of the factors that should go into these rates. But did you ever – I'm sorry. No, please, go ahead. Did you ever below say here is some specific evidence we want to put in the record that was not available or that was excluded by the invalidly appointed judges? No, Your Honor. We did not mention any specific piece of evidence other than to say that in light of the remand, we request that at the very least that we be able to submit additional papers. And I would briefly just like to add on the point of the substance of the royalty rates. Before we get to that, let me just ask you about action on smoking and health. So that's a rulemaking case, right, under the APA? Yes, Your Honor. And at the very end, it says we do not hold that an agency must start from scratch in every situation in which rules are vacated or remanded. An exception is provided by the APA itself when the agency for good cause finds that notice and public procedure, Your Honor, are practical, unnecessary, or contrary to public interest. That wasn't an issue in that case. However, this exception doesn't apply to the present case. Well, here, the agency has done just that. They put out a notice. They've asked what changes are necessary, and they've concluded that none are necessary, and your client has not really offered any new evidence to persuade them that anything is different. I don't see how this is inconsistent with action on smoking and health. Well, Your Honor, there are only – I would make two points in response to that. The first is that the specific rate-making procedures that the Board engages in are governed by the Copyright Act, not the APA, and so I don't know that the judges could necessarily rely on that APA exception. And if they did choose to do so, while they did make findings that it was unnecessary for them to reopen the record, I think they would need to make explicitly the finding that the requirements of that particular exception had been met. I don't believe that that is in the record. And so I don't believe that they've satisfied the exception articulated in action on smoking. Well, the statute provides for a paper record, right? Your position is that you can't have a paper record plus? It's the limited paper record or nothing? Yes, Your Honor. And why would that make any sense? If they wanted to improve – to give even more than the paper record, why should we read the paper record requirement as a maximum of paper rather than a minimum? They certainly can supplement the paper record, Your Honor, but that doesn't necessarily mean that they can supplement it with any particular piece of evidence they choose. Well, that would be a question of arbitrary and capriciousness, not a statutory question, wouldn't it? Well, Your Honor, the statute limits the paper record proceeding to the written direct statements and the responses that are filed. Well, that's the question. Does it limit or does it authorize? Does it authorize a paper proceeding with this basic minimum requirements or does it limit it to those basic requirements? And I think it's a little hard to read the statute as being a cap on the paper record. Well, Your Honor, I would argue that it is a cap because it specifically enumerates those types of papers and nothing else. That must be in the record, right? That must be permitted in the record. It simply says that they can conduct a proceeding based on the written direct statements and the responses. Now, of course, they certainly can supplement the record with witness testimony. And, in fact, we would like them to do that here. It's just that they cannot supplement it with testimony that was taken by judges who had no authority. Well, that's a constitutional question, not a statutory question. Yes, Your Honor. Okay. Go ahead with your argument about the $500. I would only briefly note, Your Honor, that it is not supported by the evidence. The judges have used the same logic that the court rejected in 2009. They cited an absence of evidence that the $500 fee was untenable for IBS's members, but they did not put forward any evidence that the $500 fee was specifically appropriate for all of IBS's members, especially the small and very small webcasters. Their own witness, Barry Kessler, whose testimony they rely on, testified that while $500 is the average administrative cost, that cost can vary wildly. And yet the judges made no more specific findings to show why $500 would be appropriate for smaller webcasters. Do you think they have to have evidence that it would be appropriate for every single smaller webcaster? Your Honor, they would certainly need to have additional evidence to respond to the testimony that the $500 average could vary wildly. With that being in the record, they would be obligated to show why the wild variation did not. Well, imagine there's one who can't afford it. They have to have a very, very, very, very, very, very, very, very small group composed of the one who can't afford it. No, Your Honor. They would not necessarily need to create a group so small that it only included one. Two? No, Your Honor. Five? And I think that the judges do have the authority to draw that line. Right. However, the testimony that they rely on to support the blanket $500 fee is weakened by the additional testimony that that average can vary wildly. Well, they also have evidence of another group like your own who agreed to the $500. You don't respond to that in your brief at all. We don't, Your Honor. And I will say that CBI tends to have very large members. Many of IBS's member stations are extremely small. Some of them are essentially after school. None of this material is in the record, though, I take it, right? At least it's not in the brief. It is not in the brief, Your Honor. It is in the – IBS has put evidence in front of the copyright judges that it has very small webcasters, including high school students. Go ahead. I thought part of the logic also was that there wasn't evidence that sellers would offer the $500 rate. That is correct as well, Your Honor, even if the $500 – So maybe that some people can't afford to pay it, but under the statute, the question would be whether that would be a rate that would be entered into in the open marketplace. That's correct, Your Honor, and it's hard to imagine that a willing licensee would negotiate a rate that they couldn't afford. And so, again, that is why, especially since – But wait, is there – are you saying there's a veto? It's what a willing buyer and seller would negotiate. Are you saying that the buyer could simply refuse to negotiate a rate and that's the end of it? No, Your Honor, but it is a fact that the judges need to consider. And when the evidence that SoundExchange puts forward is that the $500 average could vary wildly from station to station, they need more than simply to say that IBS's members didn't show why they couldn't afford it. They would need to show why a $500 blanket rate would be appropriate for all webcasters when SoundExchange's own witness testified that there was variability among the rates. Can I ask you one sort of underlying logic question about this? So the statute says such rates and terms shall distinguish among the different types of eligible non-subscription transmission services. Yes, Your Honor. And they do distinguish between commercial and non-commercial, correct? And one of the distinctions, I take it, is that although they both have to pay $500 minimum, the per-song royalty rate only applies to commercial. Yes. So that is a distinction that they're making. Yes, it is. Okay. Now, who has the burden of showing that there are different types of eligible? That is, what you want to do is among the non-commercial, you want to separate between, what were the words again, large and small or something like that, right? Small and very small. Small and very small. Who has the burden of establishing that those are cognizable categories? The proponent of those categories that have the burden. So IBS. If that's true, then why doesn't the absence of evidence mean you lose? If you have the burden and you don't put in any evidence, why isn't the absence alone, and I appreciate there's a considerable argument that we're not talking about absence, but your argument is all about absence. So why isn't absence enough to cause you to lose? Your Honor, if the absence is, if the board concludes that there is an absence based on a proper record, proper testimony without the constitutional violation, then that's a proper conclusion. So you're saying if we decide against you on the constitutional argument, you lose the statutory argument as well? And the APA argument as well? Well, no, Your Honor, because we're not conceding that it is a proper conclusion in light of the testimony about the considerable variability among the costs of administrating the stations. Okay, but I want to just hold that aside for the moment. I'm just a little bit stuck on the reason why absence of evidence isn't enough. Notwithstanding the requirement that the board act, the judges act with substantial evidence, in this case the question is the burden of proof, and if the burden is on you, why isn't the absence of evidence to distinguish the two categories enough? Even if there's wild variation, how do we know that there's a small and a very small? Well, Your Honor, I think that it is IBS's burden to prove that the categories it proposes exist. But if the judges are going to rely on specific lines of testimony to support the royalties that they set, then it would be their burden to support that properly, which they have not done by failing to address variability that's in the record and by merely citing an absence of evidence contrary to their particular position. So even if the judges don't necessarily want to recognize all of the categories that IBS proposes, it's not IBS's burden to rebut whatever rate the judges choose for the categories that they do recognize. It's that burden, and if I didn't clarify earlier in response to your earlier question, I apologize, but it is still the burden on the judges to support the rates that they do arrive at with substantial evidence and not merely an absence of evidence, which is not what they did here. Can I just clarify, what did you propose before the judges that should be the rate for the small and very small in this category? $100 and $20 annual fees, Your Honor. And that was based, as I recall in your brief mention, or in the record, somewhere it's in the record that some of these clubs and entities that are your members have budgets as low as like $30 some dollars a year or something, right? Yes, Your Honor. So that's the evidence that you say supports those levels because you can't point to any negotiated licenses to support those levels, right? Correct. It is the budgets of the various members that was the basis of IBS's evidence for the lower rates. And by statute, aren't the judges supposed to prefer or rely upon negotiated licenses in what the market says as opposed to what people can afford to pay? They do, Your Honor, but they are necessarily setting rates in the setting where there has not been an agreement in the market. They don't set these rates to the hearing if the market has produced negotiations. And so if the absence of negotiated rates precluded the judges from considering other evidence, there would be no evidence ever in support of any particular rate unless the parties agreed to settle. I take it that what you're talking about again is Captain Cass' testimony that was excluded. Yes, Your Honor. About how much some of the members have as budgets. Yes, that's right. Thank you. I've exceeded my time. If there's no further questions, I'll take questions. Only by 20 minutes. Thank you, Your Honor. We'll hear from the other side. Good morning. Sonya McNeil for the government. As the court's questions recognize, what is before us here is a new decision entered by new constitutionally appointed copyright royalty judges. IBS's argument boils down to an assertion that the new judges in their new determination considered inadmissible evidence. Now, IBS frames this as constitutional taint, but it's really a straightforward APA review question. There's no argument here that the new judges were not constitutionally appointed. The judges were free to look at the oral evidence collected during the prior hearing, particularly after asking the parties whether there was any reason that they shouldn't do so. And to the extent that that decision was error, IBS has failed to carry its burden to show that that error was harmful. What about the Landry point that we don't require proof of prejudice? Your Honor, Landry was on a direct review case. Here, as the court observed, the court has remanded. There's been a new proceeding in front of new judges. So the procedural posture here is different. But why does the procedural posture matter? In that case, there was a person who was properly appointed who made the same decision. Yes, Your Honor, but here the properly appointed judges were not presented with the same catch-22 that this court felt it was in Landry. We don't have an officer with purely recommendatory authority. We instead have three new constitutionally appointed copyright royalty judges carrying out a brand-new proceeding that produced a brand-new determination. Can I just add? I don't mean to interrupt the constitutional argument, but actually I do just for one moment just to respond to something that the other side said. He said there was evidence of wildly varying, well, maybe I'm going to ask you to rephrase for me what he said, wildly varying costs or wildly varying budgets, which was it? So let me clarify. Sound Exchange's chief operating officer testified that it was difficult to disaggregate between commercial and non-commercial webcasters the average administrative cost. In its written rebuttal testimony, IBS proposed that the minimum fee should be based on a per-performance administrative cost and went on to say that if the fee were based on a per-performance administrative cost, that it would vary wildly because small and very small commercial webcasters would use less music, would broadcast fewer performances to fewer listeners than others. And actually I think it's important to underscore here that the definition of small and very small that IBS proposed in this proceeding had nothing to do with the financial capacity of the webcasters. Small and very small, as IBS understood it, was about the amount of copyrighted music that the webcaster in question broadcast. IBS has conceded that there is no specific piece of evidence that it wanted to add that the judges excluded and that nothing was improperly excluded by the first panel of copyright royalty judges. It's conceded that the copyright royalty judges are not required to set a rate. Now before we get to that, I still want to, what was it that Sound, he, your opponent, said that Sound Exchange admitted that there were wildly varying somethings. And what I'm asking is what did Sound Exchange actually say? Sound Exchange said that the average administrative cost for commercial or non-commercial webcasters was about $825. Now the cost could vary if, for instance, a commercial webcaster or even a non-commercial webcaster allowed user-created stations. In that instance, there would not be a significant additional administrative burden in administering the license. However, there is no evidence in the record that there would be wild variation in the administrative cost that a small or very small webcaster would have to pay by virtue of their membership in that proposed category. Can you tell me the pages in the JA that we're talking about here? Do we have Sound Exchanges? We do, Your Honor, beginning at JA 23 through 27. Thank you. IBS has conceded that the judges were not required to set a rate that kept every webcaster in business. Here, there was no evidence in the record about either the membership of IBS or of CVI. IBS conceded that it bears the burden to demonstrate that the distinctions, the small and very small webcaster categories are warranted, and it's failed to do so here. I'm happy to take any further questions from the panel, but if the Court has no further questions, we ask that the determination be affirmed. Okay, thank you very much. Well, oh, yes, we have an intervener. Greg? Thank you, Your Honor. Matt Hellman on behalf of Sound Exchange. The normal review on the existing record here has the twin virtues of both being lawful and eminently sensible. There's been a lot of talk of prejudice this morning. I think prejudice was back when this Court first looked at the Appointments Clause violation and didn't require IBS to show prejudice from that violation in order to make out a claim of an Appointments Clause violation. Then, when the case went back — You're saying did require, Your Honor? No, did not. Did not. And that was appropriate under this Court's precedence. But that's the end of the prejudice analysis, at least as the case comes to this Court. At that point, the CRJs looked at the existing record, specifically asked IBS to point to determinations that relied on credibility that they felt could not be considered in light of the Appointments Clause violation. Nothing was pointed to. The only evidence that was excluded was this testimony from Captain Cass, as Your Honor has pointed out. The CRJs, in their new determination that's on review, specifically discussed the import of this testimony and found that it would not have changed their decision in any way. So I don't believe that there's any role for prejudice to play in this case or a prejudice analysis. There was some question about the nature of Sound Exchange's testimony and what they said about the cost of administration, if I understood that correctly. My friend on the other side pointed, Your Honor, to the appropriate place in the JA. JA 26, I think, is the most pertinent case. Is this your friend on the other side or your friend on the same side? My friend on the same side, at least today. What Ms. Tesler said on behalf of Sound Exchange was, I think quite candidly, it's difficult to pin a precise administrative cost on a per-station basis because there are some ways in which some stations can make those administrative costs go up. If they don't report the music that they transmit or broadcast in an easy-to-process way, that can make it more expensive. But she said that a good-faith analysis, and she works through it over two or three pages, is that it works out to be about $833 in administrative costs per station. The CRJs, in their determination below, pointed to that as affirmative evidence, supporting the $500 minimum fee. They pointed to the actual agreement by CBI for the $500 minimum fee. And they pointed to other non-commercial broadcasters, all of whom had settled or approved minimum fees at that level. That is more than enough to justify the CRJ's determination in the case. And unless the Court has further questions, I'm out of time anyway. Other questions? Thank you. Okay. Unfortunately, you're also out of time, but we'll give you another minute anyway. Thank you, Your Honor. I would like to make just two or three brief points in response to the argument we've just heard. First regards the fact that the de novo review here was all that the Court required  I think that the judge's own characterization of this procedure is relevant. At page 235 of the J.A., the judges describe their role on remand as picking up the process where their predecessors left off. This suggests a continuation of the unconstitutional work is not in the spirit of a de novo review. I would also point out that the argument that no showing is required this time around, would essentially turn Landry on its head. As long as a constitutional error made it through the first level of review, it could permeate through future decisions without any requirement of showing. What about the risk that the second set of judges won't want to offend the previous set of judges and that that risk, therefore, taints any possible second set of judges? Your Honor, I don't believe that there is any evidence of that consideration. Well, are you saying there has to be evidence of prejudice? I thought you said there doesn't have to be any evidence of prejudice. No, Your Honor, but I don't think that the new judges have given any indication that they're afraid of offending their predecessors. But I'm still asking, when you say, I'm just trying to figure out exactly what you mean by no evidence of prejudice is required, you really don't, you don't really mean that. You mean conceivable prejudice or something like that? How would you qualify your argument here? Your Honor, I would qualify it this way. Whether or not this Court chooses to remand the determination should not depend on whether IBS can put forward an affirmative piece of evidence to demonstrate that a prejudice existed. So why, therefore, shouldn't it be impossible for any new set of judges to ever decide this case? If you don't have to show that they could or could not be tainted by respect for their previous colleagues, why doesn't that mean that we're in stasis here and never have a new decision? Well, Your Honor, they can easily have a new decision as long as they compile a record that is their own record. But even so, maybe they would defer to the previous in order to, I don't know, to show that the previous people weren't themselves tainted. And a mark of their respect for their colleagues is, you know, we've done this ourselves and now we're going to do exactly what the others said, so they are plaintiffs. Why isn't that alone sufficient? Your Honor, I think that that risk would be cured by the fact that the record was compiled independently and the judges made their determination by citations to the new record that reflects their own judgment. That would be enough to satisfy Landry and result in a constitutional determination. I have, again, gone over my time. If there are no other questions, I'll take my seat. Further questions? Okay, thank you. Thank you. We'll take the matter under submission and we'll take a brief break before the court is adjourned.
judges: Garland, Srinivasan, Wilkins